IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| EUGENE MCDUFFIE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 319-051 |
| | ) | |
| AIMEE SMITH, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Petitioner, an inmate at Dooly State Prison in Unadilla, Georgia, brings the above-captioned petition pursuant to 28 U.S.C. § 2254.  Having considered all the relevant pleadings, for the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Petitioner's § 2254 petition be **DENIED** without an evidentiary hearing or appointment of counsel, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

I.     **BACKGROUND**

This case challenges the validity of Petitioner's conviction for malice murder, as determined by a jury in Telfair County, Georgia, after a trial conducted May 9 and 10, 2006. McDuffie v. State, 779 S.E.2d 620, 624 & n.2 (Ga. 2015).  The trial court sentenced Petitioner to life imprisonment.  Id.  Retained counsel, Ms. Johnnie Graham, represented Petitioner at trial.  (Doc. no. 10-2, p. 2.)  Ms. Graham filed a notice of appeal on May 31, 2006, and on August 23, 2006, newly retained counsel, Mr. R. Gary Spencer, filed an entry

of appearance.  (Id.); McDuffie, 779 S.E.2d at 624 & n.2.  On October 9, 2006, Mr. Spencer moved to remand the case to the trial court so Petitioner could pursue an ineffective assistance of counsel claim against Ms. Graham.  (Doc. no. 10-2, p. 2); McDuffie, 779 S.E.2d at 624 & n.2.  The Supreme Court granted the motion to remand the case for the limited purpose of the trial court holding an evidentiary hearing on the allegations of ineffective assistance of trial counsel.  (Doc. no. 10-2, p. 2); McDuffie, 779 S.E.2d at 624 & n.2.

On December 11, 2006, Petitioner filed a motion for new trial, which he subsequently amended three times.  (Doc. no. 10-2, p. 2); McDuffie, 779 S.E.2d at 624 & n.2.  The trial court held a hearing on October 8, 2008, and requested post-hearing briefs by December 1, 2008.  (Doc. no. 10-7, pp. 95, 167.)  During the two-year delay that followed, the original trial judge retired, and Petitioner's post-hearing brief was not filed until February 25, 2011. (Doc. no. 10-2, p. 2); McDuffie, 779 S.E.2d at 624 & n.2.  The State did not file its response until November 5, 2012.  (Doc. no. 10-2, p. 2); McDuffie, 779 S.E.2d at 624 & n.2.  Another two years passed before Petitioner's counsel requested a ruling on his motion for new trial, and an order denying the motion for new trial entered on December 17, 2014.  (Doc. no. 10-2, p. 2.)  However, the clerk of court served the order on an incorrect address for Petitioner's counsel, resulting in a January 30, 2015 motion for an out-of-time appeal, to which the State consented and the trial court allowed.  (Id. at 2-3); McDuffie, 779 S.E.2d at 624 & n.2.  The Georgia Supreme Court heard oral argument on September 15, 2015, and affirmed Petitioner's conviction in a written opinion issued November 15, 2015.  (Doc. no. 10-2, p. 3); McDuffie, 779 S.E.2d at 624 & n.2.

2

On direct appeal, Mr. Spencer argued Ms. Graham provided ineffective assistance in three ways, by failing to:  (1) call as a witness GBI Special Agent Spencer Barron, the lead investigator, to impeach the testimony of State witnesses and introduce evidence Petitioner was not present at the shooting; (2) force Chelsea Walker, a witness Petitioner contended could testify she saw someone other than Petitioner shoot the victim, to take the stand even though the record showed she was incoherent, screaming, and refused to enter the courtroom when called; and (3) re-advise Petitioner of his right to testify after declining to call Agent Barron or compel Ms. Walker's testimony.  (Doc. no. 10-7, p. 181); McDuffie, 779 S.E.2d at 623-24.  The Georgia Supreme Court found no merit to the ineffective assistance of counsel claims and affirmed the judgment.  McDuffie, 779 S.E. 2d at 623-24.  Mr. Spencer also argued on direct appeal the prosecutor made improper remarks about the State's witnesses during closing argument, but because Ms. Graham did not object at trial, the Supreme Court ruled that issue was not preserved for review on appeal.  (Doc. no. 10-7, p. 182); McDuffie, 779 S.E.2d at 624.

The Georgia Supreme Court summarized the facts adduced at trial as follows:

Around 9:30 p.m. on August 18, 2004, [the victim, Jurrell] Clarke was driving in McRae, Georgia, when he spotted [Petitioner's] Jeep Cherokee and turned to follow it, telling his nephew and his nephew's friend, who were in the car with him, that he needed to handle some business with [Petitioner]. [Petitioner] parked in front of the home of George Harris and walked up to the front porch, where Harris was talking with Tyler Southerland.  Clarke parked behind the Jeep, got out, walked over to [Petitioner], and said to [Petitioner] that [Petitioner's] father had taken some "merchandise"—meaning cocaine— from his backyard and that he wanted it back.  [Petitioner] admitted that his father took the cocaine but said that he was not responsible for his father's actions.  [Petitioner] and Clarke then started arguing.

Meanwhile, Rashaan Crisp was in the backyard talking to Chelsea Walker. [Petitioner] had given Crisp a ride to Harris's earlier that day, and on the way over [Petitioner] showed Crisp a 9mm handgun that he just got.  Crisp heard [Petitioner] and Clarke arguing in the front yard and came around from the back and positioned himself where he could overhear what was being said without being seen.

The argument between [Petitioner] and Clarke became increasingly heated, and Clarke, who was much larger than [Petitioner], suggested that they fight it out in the street.  Southerland, who was about the same size as Clarke, stepped up, said that [Petitioner] was too small to fight, and invited Clarke to "fight me."  At that point, Clarke called to his nephew to "get my gun" and started turning around to go back to his car.  (Evidently this was a bluff, as Clarke did not have a gun in his car.)  [Petitioner] said, "you not the only one that has a gun," pulled out his new 9mm handgun, and fired two to three shots at Clarke from a distance of six or seven feet, hitting him once in the left thigh and once in the back of the head, which killed him.  Crisp testified that he peeked around the corner just in time to see [Petitioner] shoot Clarke.

Officer Benton Shumate of the McRae Police Department was outside the nearby police station, heard the shots, and went to investigate. As Officer Shumate drove down Harris's street, he saw [Petitioner's] Jeep idling in the middle of the road and Southerland and two other men standing alongside the Jeep talking to [Petitioner].  The Jeep pulled forward into an intersection, turned right, and stopped again.  One of the men with Southerland walked to Harris's front porch while Southerland and the other man walked over to the Jeep and resumed talking to [Petitioner].  When the man who went to the porch saw the police car, he whistled and called out to [Petitioner], Southerland, and the other man, and they turned and looked at Officer Shumate.  [Petitioner] then sped off in the Jeep.  Officer Shumate attempted to follow, but Southerland and the man with him came out into the street and waved him down under the pretense of asking for a ride home, allowing [Petitioner] to get away.  Officer Shumate contacted another officer in the area and gave him a description of [Petitioner's] vehicle.  That officer pulled the Jeep over a couple blocks away, and [Petitioner] consented to a search, but no gun was found in the Jeep.  [Petitioner] was allowed to drive to the police station, where he was questioned, cited for impeding the flow of traffic and failing to stop for a stop sign, and released.

Two 9mm shell casings and two 9mm bullets fired from the same gun were found by the police at the crime scene, but the gun was not found.  Within days of the shooting, someone told [Petitioner's] girlfriend where the gun was hidden, and she asked Cena Knowles to help her dispose of it.  Knowles went

with [Petitioner's] girlfriend and another woman to the crime scene, retrieved the gun from its hiding place, and threw the gun into the middle of a river. [Petitioner] was not arrested until January 4, 2005.

Southerland, Crisp, Clarke's nephew, and the nephew's friend all knew [Petitioner], and they each testified at trial that they saw [Petitioner] shoot Clarke. Knowles testified about helping [Petitioner's] girlfriend dispose of the gun. The defense acknowledged that [Petitioner] was at the crime scene and that he argued with Clarke before the shooting, but denied that [Petitioner] was the shooter, trying to cast suspicion on Harris, who did not testify at trial. [Petitioner] did not testify, but he called the officer who pulled him over on the night of the shooting to testify that the consent search of the Jeep did not turn up a gun, bullets, or drugs; his girlfriend, who claimed that she had never been to Harris's place and denied helping Knowles dispose of a gun; and a character witness. [Petitioner] also called Chelsea Walker, who was at the courthouse but refused to take the witness stand; [Petitioner] declined the court's offer to compel Walker to testify.

McDuffie, 779 S.E.2d at 622-23.

Petitioner subsequently filed, through his third retained counsel Robert Patillo, a state habeas corpus petition, raising the following grounds for relief.

(1)     Trial counsel provided ineffective assistance by failing to make an objection to the composition of the jury under Batson v. Kentucky, 476 U.S. 79 (1986), and appellate counsel provided ineffective assistance by not raising trial counsel's failure to address the jury composition. (Doc. no. 10-2, p. 3; doc. no. 10-5, pp. 5-6.)

(2)     Trial counsel provided ineffective assistance by failing to make sure Petitioner was present for sidebar conversations between defense counsel and the trial court, and appellate counsel provided ineffective assistance by not raising trial counsel's failure to ensure Petitioner's presence during the sidebar conversations. (Doc. no. 10-2, p. 3; doc. no. 10-5, p. 6.)

(3)     Trial counsel provided ineffective assistance by failing to present exculpatory testimony from Chelsea Walker, and appellate counsel provided ineffective assistance by not presenting the exculpatory testimony of Ms. Walker and Ashley Lasher at the motion for new trial hearing. (Doc. no. 10-2, p. 3; doc. no. 10-5, p. 6.)

The state habeas court denied the state petition in its entirety in an order dated September 19, 2018, and filed September 24, 2018.  (Doc. no. 10-2.)  The Georgia Supreme Court denied a certificate of probable cause to appeal without comment.  (Doc. no. 10-4, McDuffie v. Johnson, No. S19H0396 (Ga. June 10, 2019).)

Petitioner then timely filed the above-captioned § 2254 petition, raising the following claims for relief.

> (1)    Appellate counsel provided ineffective assistance by not raising trial counsel's alleged ineffectiveness in failing to make an objection to the composition of the jury under Batson v. Kentucky, 476 U.S. 79 (1986). (Doc. no. 1, p. 7; doc. no. 8, p. 6.)

> (2)    Appellate counsel provided ineffective assistance by not arguing Petitioner's right to be present for a sidebar conference between trial counsel, the State, and the trial court judge regarding the composition of the jury had been violated.  (Doc. no. 1, p. 7; doc. no. 8, p. 6.)

> (3)    Trial counsel provided ineffective assistance for failing to call as a witness GBI Special Agent Spencer Barron, the lead case investigator. (Doc. no. 1, p. 7; doc. no. 8, p. 6.)

> (4)    Trial counsel provided ineffective assistance by failing to object to racially inflammatory remarks made during the prosecutor's closing arguments.  (Doc. no. 1, p. 7.)  Also, the racially inflammatory remarks violated Petitioner's Due Process rights under the United States Constitution and Georgia law.  (Doc. no. 8, pp. 6, 17-19.)

## II.    NO RIGHT TO APPOINTED COUNSEL OR EVIDENTIARY HEARING

In his reply brief, filed over four months after Respondent's answer and without benefit of the notice of intent to file a reply contemplated by Local Rule 7.6, Petitioner requests appointment of counsel and an evidentiary hearing.  (Doc. no. 11, p. 10.)   Legal arguments raised for the first time in a reply brief come too late.  Beck v. Shinseki, No. 113-126, 2015 WL 1202196, at *28 n.42 (S.D. Ga. Mar. 16, 2015) (collecting cases supporting

proposition arguments raised for first time in reply brief, even in *pro se* brief, not properly

before the court).  Thus, the procedurally improper requests should be **DENIED** on that basis

alone.  However, even if such requests were properly before the Court, Petitioner is not

entitled to appointment of counsel in this habeas corpus proceeding, and he has not identified

any basis upon which a hearing is warranted.

### A.    No Right to Appointed Counsel

There is no automatic constitutional right to counsel in habeas proceedings.  <u>See</u>

<u>Pennsylvania v. Finley</u>, 481 U.S. 551, 555 (1987).  "In a habeas action in federal court[,]

there is no requirement that counsel be appointed unless appointment of counsel is necessary

to due process."  <u>Norris v. Wainwright</u>, 588 F.2d 130, 133 (5th Cir. 1979)[1] (citations

omitted).  Moreover, appointment of counsel is "a privilege that is justified only by

exceptional circumstances[.]"  <u>McCall v. Cook</u>, 495 F. App'x 29, 31 (11th Cir. 2012) (*per

curiam*).  In sum, "[e]xcept in rare and extraordinary cases where due process principles of

fundamental fairness would be violated if counsel is not appointed, there is no federal

constitutional right" to appointed counsel.  Donald E. Wilkes, Jr., <u>Federal Postconviction

Remedies and Relief Handbook</u> § 2.2, at 191 (2017 ed.).

The Court does not find any exceptional circumstances justifying the appointment of

counsel.  <u>See</u> <u>McCall</u>, 495 F. App'x at 31.  Petitioner has had no problem communicating

with the Court, as evidenced by his detailed petition and briefing, which are full of factual

---

[1]In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the
Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit rendered
prior to October 1, 1981.

detail and legal argument supported by abundant citations to case law.  Nor does the case present any due process concerns.  Accordingly, even if the request for appointed counsel were properly before the Court, which it is not, such a request should be **DENIED**.

### B.    Analytical Framework for Considering Hearing Request

When determining whether an evidentiary hearing is warranted, the Court must consider the restrictions of § 2254(e)(2), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, ("AEDPA"):

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that - -
>
> (A)    the claim relies on - -
>
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B)    the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).  Because this code section applies only when an "applicant has failed to develop the factual basis of a claim," an evidentiary hearing is prohibited where a petitioner fully developed the factual basis of his claim in state court.

A petitioner who has "failed to develop the basis for a claim" must establish "a factual predicate that could not have been previously discovered through the exercise of diligence."  § 2254(e)(2)(A)(ii).  Diligence is a reasonable attempt, in light of the information

then available, to investigate and pursue claims in state court.  Williams v. Taylor, 529 U.S. 420, 436 (2000).  A petitioner is not diligent when he has failed to present evidence despite notice, access to the evidence, and sufficient time to prepare.  Pope v. Sec'y Dep't of Corr., 680 F.3d 1271, 1289 (11th Cir. 2012).  Petitioner must also "persuade the [Court] that the proffered evidence would affect the resolution of the claim."  Breedlove v. Moore, 74 F. Supp. 2d 1226, 1233 (S.D. Fla. 1999) (citing Bolender v. Singletary, 16 F.3d 1547, 1555 n.9 (11th Cir. 1994)); see also Stephens v. Kemp, 846 F.2d 642, 650-51 (11th Cir. 1988) (same). "[I]f a habeas petition does not allege enough specific facts that, if they were true, would warrant relief, the petitioner is not entitled to an evidentiary hearing."  Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011).

The Court must also consider § 2254(d), as follows:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"'[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits' . . . and therefore 'evidence introduced in federal court has no bearing on § 2254(d)(1) review.'"  Landers v. Warden, 776 F.3d 1288, 1295 (11th Cir. 2015) (quoting Cullen v. Pinholster, 563 U.S. 170, 181, 185 (2011)) (internal citations

omitted).  The restriction "applies even more clearly to § 2254(d)(2), which contains an explicit textual restriction to evaluate the state court ruling only 'in light of the evidence presented in the State court proceeding.'"  <u>Id.</u> (quoting § 2254(d)(2)).

Furthermore, "although § 2254(e)(2) permits federal habeas courts to take new evidence in an evidentiary hearing, that provision applies only when the petitioner has either satisfied § 2254(d), or the federal court is deciding claims that were not adjudicated on the merits in state court."  <u>Locke v. Sec'y, Fla. Dep't of Corr.</u>, No. 5:15cv55/RV/EMT, 2016 WL 3647795,  at *32 (N.D. Fla. May 12, 2016) (citing <u>Cullen</u>, 563 U.S. at 185-86), *adopted by*, 2016 WL 3647875 (N.D. Fla. June 30, 2016); <u>see also</u> <u>Pope v. Sec'y, Fla. Dep't of Corr.</u>, 752 F.3d 1254, 1263 (11th Cir. 2014) ("§ 2254(d) must be satisfied before a federal habeas court may consider any § 2254(e)(2) evidence.") (citing <u>Cullen</u>, 563 U.S. at 181-82).

### C.    Petitioner Is Not Entitled to an Evidentiary Hearing

Petitioner is not entitled to an evidentiary hearing because he has entirely failed to identify any particular claim upon which he believes a hearing is warranted or to show the facts underlying any such claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error no reasonable factfinder would have found him guilty of malice murder.  Likewise, he has not argued, let alone satisfied, any of the requirements outlined above with respect to development of the factual basis for a claim or establishment of due diligence concerning the investigation and pursuit of his claims in state court.  Indeed, the record reflects Petitioner engaged the services of three different retained counsel during his extensive state court proceedings, and nothing in the record suggests Petitioner was prevented in any way from investigating his claims.  Likewise, Petitioner has

not proffered any evidence or shown any such evidence would affect the resolution of any claim in his federal petition.

Accordingly, even if the request for a hearing were properly before the Court, which it is not, such a request should be **DENIED**.

## III.    STANDARD OF REVIEW

Under § 2254(d), as amended by AEDPA and as set forth above, federal habeas corpus relief is not available on a claim adjudicated on the merits in State court unless the decision (1) was contrary to, or involved an unreasonable application of  clearly established Federal law, or (2) was based on an unreasonable determination of the facts in light of the State court evidence.  The United States Supreme Court has characterized § 2254(d) as "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions."  Harrington v. Richter, 562 U.S. 86, 103 (2011).  Accordingly, § 2254(d) creates a "difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt."  Cullen, 563 U.S. at 181 (citations omitted).

In Brown v. Payton, 544 U.S. 133, 141 (2005), the Supreme Court explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) as follows:

> A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result.  A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

11

Id. (internal citations omitted).  Thus, under § 2254(d)(1), it is not enough to demonstrate that a state court's decision is wrong; "even clear error will not suffice."  White v. Woodall, 572 U.S. 415, 419 (2014).  Rather, the habeas petition must show the state court decision was "objectively unreasonable." Wiggins v. Smith, 539 U.S. 510, 520-21 (2003); see also Woods v. Donald, 575 U.S. 312, 316 (2015) (a petitioner must show the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").  A showing that the state court's determination was unreasonable is a substantially higher threshold than whether it was correct.  Reed v. Sec'y, Fla. Dep't of Corr., 767 F.3d 1252, 1260-61 (11th Cir. 2014); Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1325 (11th Cir. 2013).  In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 563 U.S. at 181.

Moreover, under AEDPA's highly deferential standard of review for state court factual determinations, a federal habeas court may only grant relief if a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  Additionally, § 2254(e)(1) requires the Court "to presume the correctness of state courts' factual findings" unless the habeas petitioner rebuts that presumption "with clear and convincing evidence." Nejad v. Att'y Gen., State of Ga., 830 F.3d 1280, 1289 (11th Cir. 2016) (citing Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007)); see also Reese v. Sec'y, Fla. Dep't of Corr., 675 F.3d 1277, 1287 (11th Cir. 2012) ("In a habeas proceeding, our review of findings of fact by the state court is even more deferential

than under a clearly erroneous standard of review.").   "The Supreme Court has not yet defined § 2254(d)(2)'s precise relationship to § 2254(e)(1). . . .   Whatever that precise relationship may be, a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Tharpe v. Warden, 834 F.3d 1323, 1336 (11th Cir. 2016) (citing Wood v. Allen, 558 U.S. 290, 301 (2010)).

## IV.   DISCUSSION

### A.   Applying AEDPA Deference to the Ineffective Assistance of Trial and Appellate Counsel Claims Previously Rejected by the State Court, Federal Habeas Relief Is Not Warranted

#### 1.   Under Strickland v. Washington, Petitioner Bears a Heavy Burden on Ineffecitve Assistance of Counsel Claims

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688.   In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions."  Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).  Strategic decisions are entitled to a "heavy measure of deference."  Strickland, 466 U.S. at 691. Indeed, "strategic choices are 'virtually unchallengeable.'"  Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) (citing Strickland, 466 U.S. at 690 and Waters v. Thomas, 46 F.3d 1506, 1522 (11th Cir. 1995) (*en banc*)).   To show that an attorney's choice of

strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice. Strickland, 466 U.S. at 690.

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters, 46 F.3d at 1512).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see also Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is

insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted). Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different." Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

The Strickland test also applies to claims of ineffective assistance of appellate counsel, see Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991), with the additional consideration that a criminal defendant has no constitutional right to compel appellate counsel "to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751 (1983); see also Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009) (explaining appellate counsel not required to raise every non-frivolous issue). Appellate counsel is not ineffective for failing to raise claims 'reasonably considered to be without merit.'" United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (citation omitted). Moreover, it is up to appellate counsel to winnow out weaker arguments, even if they may have merit, and select the most promising issues for review. Jones, 463 U.S. at 751-52; Philmore, 575 F.3d at 1264. Prejudice turns on whether "the neglected claim would have a reasonable probability of success on appeal." Philmore, 575 F.3d at 1265 (citation omitted).

In the context of an ineffective assistance claim that was previously rejected by a state court, the petitioner bears the even heavier burden of "show[ing] that the [state courts] applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 699 (2002); see also Cave v. Sec'y for Dep't of Corr., 638 F.3d 739,

748 (11th Cir. 2011) (noting that, where the state court has previously adjudicated a claim on the merits, the petitioner "has the additional burden of demonstrating that the state court's application of this demanding standard was not merely wrong, but objectively unreasonable").  "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied <u>Strickland</u> incorrectly."  <u>Bell</u>, 535 U.S. at 699.  "In short, an *unreasonable* application of federal law is different from an *incorrect* application of federal law."  <u>Barwick v. Sec'y, Fla. Dep't of Corr.</u>, 794 F.3d 1239, 1245 (11th Cir. 2015) (internal quotations and citations omitted).  "Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied <u>Strickland's</u> deferential standard.  <u>Richter</u>, 562 U.S. at 105.

"Surmounting <u>Strickland's</u> high bar is never an easy task."  <u>Id.</u> (citing <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010)).  Moreover, because "[t]he standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, . . . when the two apply in tandem, review is doubly so."  <u>Richter</u>, 562 U.S. at 105 (quotation marks and citations omitted); <u>see also</u> <u>Yarborough v. Gentry</u>, 540 U.S. 1, 4 (2003) (review of attorney performance is "highly deferential-and doubly deferential when it is conducted through the lens of federal habeas").  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment . . . .  [F]ederal courts are to afford both the state court and the defense attorney the benefit of the doubt."

<u>Woods v. Etherton</u>, 578 U.S.-, 136 S. Ct. 1149, 1151 (2016) (internal quotations and citations omitted).

To obtain federal habeas relief, "[t]he state court decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Id.</u>  Put another way, "[t]he <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial." <u>Richter</u>, 562 U.S. at 105; <u>see also</u> <u>Sexton v. Beaudreaux</u>, 584 U.S.-, 138 S. Ct. 2555, 2560 (2018) ("[B]ecause the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." (citation omitted)); <u>Woods</u>, 575 U.S. at 316 ("AEDPA's standard is intentionally difficult to meet.").

> **2.    The State Court's Application of <u>Strickland</u> to Petitioner's Ineffective Assistance of Appellate Counsel Claims in Grounds One and Two Was Not Objectively Unreasonable**

In Ground One of the federal petition, Petitioner argues appellate counsel provided ineffective assistance by not raising trial counsel's alleged ineffectiveness in failing to make an objection to the composition of the jury under <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986). In Ground Two, Petitioner argues Mr. Spencer rendered ineffective appellate assistance by failing to challenge Petitioner's absence from a sidebar conference between trial counsel, the State, and the trial court judge regarding the composition of the jury.  The state habeas court rejected these two claims, concluding Petitioner had not shown Mr. Spencer's performance fell below an objective standard of reasonableness.  (<u>See</u> doc. no. 10-2, pp. 9-11.)  The Georgia Supreme Court denied the request for a CPC in a two sentence order:  "Upon consideration of the application for certificate of probable cause to appeal the denial of

habeas corpus, it is ordered that it be hereby denied.  All the justices concur." (Doc. no. 10-4.)  Because the state supreme court decision did not come accompanied with reasons, this Court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" when determining, pursuant to 28 U.S.C. § 2254(d), whether the state court decision was reasonable.  Wilson v. Sellers, 584 U.S.-, 138 S. Ct. 1188, 1192 (2018).   The Court is also guided by AEDPA's mandate that factual determinations made by a state court are presumptively correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  Tharpe, 834 F.3d at 1336.

Thus, the Court turns its attention to the state habeas court reasoning, as it is the last state court to decide Petitioner's federal ineffective assistance of appellate counsel claim in a reasoned opinion.  See Wilson, 138 S. Ct. at 1192.  As discussed below, the state habeas court correctly identified and applied the Strickland analysis to determine Petitioner did not show counsel's performance was objectively unreasonable.  (See doc. no. 10-2.)

### a.      Testimony at State Habeas Evidentiary Hearing

Retained counsel Gary Spencer was admitted to the Georgia Bar in 1992, and had worked with the Fulton County Public Defender's Office and the Federal Defender's Program for the Northern District of Georgia, as well as opening his own practice.  (Doc. no. 10-5, p. 8.)  Seventy to eighty percent of Mr. Spencer's experience was in criminal defense work, and he handled approximately 300 felony jury trial and thirty-five to forty appeals at the time he represented Petitioner.  (Id. at 8-9.)  Petitioner retained Mr. Spencer after the

conviction but prior to the hearing on the motion for new trial.  (Id. at 9-10.)  In preparation

for his representation of Petitioner, Mr. Spencer obtained the trial attorney's file, spoke with

trial counsel, Petitioner, Petitioner's family, and some trial witnesses, including GBI Special

Agent Barron, and reviewed the trial transcript.  (Id. at 10-11.)

### i.      Jury Selection

Mr. Spencer recalled discussing the racial composition of the jury with Petitioner and

his mother because they were concerned about the all-white jury convicting Petitioner, an

African American.  (Id. at 15-16, 20.)  However, he did not pursue an investigation of the

jury list or put into the record the racial composition of the jurors, as he was focused on

investigating the claim of a potentially exculpatory witness who came to the trial but did not

testify.  (Id. at 16.)

Retained habeas counsel Robert Patillo, Jr., questioned Mr. Spencer about his

investigation of the Batson issue at the habeas corpus hearing.  The only evidence about jury

selection presented by Mr. Patillo was (1) testimony from Petitioner and Mr. Spencer that an

all-white jury had been seated, (2) a copy of a letter written by Petitioner to Mr. Spencer

expressing his concern that the jury was selected from the first thirty-two jurors in the jury

pool, and "the district attorney struck all the blacks of that section," and (3) testimony from

Petitioner's mother that she was present for jury selection and observed the State striking all

of the African American jurors.  (Id. at 20, 37-38, 68-70.)  The extent of Petitioner's

testimony about the jury composition was that four or five African Americans were in the

jury pool from which the final jury was selected and that no reason had been given for

striking those jurors because a silent strike method had been used.  (Id. at 52.)  When asked

19

about the letter Petitioner wrote to Mr. Spencer concerning the racial composition of the jury pool and the manner in which he determined the numbers of white and African American jurors, Petitioner testified only that he remembered observing the jurors when they stood up to give their names.  (Id. at 59-60.)

In the absence of definitive evidence on the issue of the racial composition of the jurors and the selection process which resulted in seating an all-white jury, the state habeas judge questioned Petitioner's mother about her observations of the jury selection process, (id. at 38-44), as did counsel for the State, (id. at 44-48).  Petitioner's mother told the state habeas judge that she did not remember or understand how jurors were chosen or eliminated. (Id. at 40-42.)  When Mr. Patillo produced the State's traverse juror strike list, (id. at 71-73), Petitioner's mother was able to identify five of the first thirty-one jurors as African Americans.  (Id. at 43.)  Two of those five jurors, Adam Graham (#18) and Charles McMillian (#26), were struck before selection ever began for not showing up or having been excused.  (Id. at 44-45.)  Petitioner's mother could not recall any of the reasons why the remaining African American jurors were struck, other than one juror who did not make it into the first set of jurors from which the jury was selected because she was a relative of someone involved in the trial.[2]  (Id. at 46-47.)  However, the state habeas judge was able to review the trial transcript, which revealed the following non-race based reasons for striking the three African American jurors Petitioner's mother had identified as struck from the original pool of present jurors:  Melvin Moring (#9) knew a potential defense witness, was

_____

[2]It appears Petitioner's mother may have been remembering juror #39, who knew the victim and was excused for cause at the request of the defense.  (Doc. no. 10-5, pp. 241-42.)

familiar with the crime location, and had previously heard about the case, (id. at 229-30, 242-43); William Hollis (#28) knew and had pastored the victim's family, (id. at 236); and Rodney Smith (#31) knew Petitioner and several potential witnesses and was familiar with the crime location, (id. at 224-25, 242-43; doc. no. 10-6, pp. 5-6).

### ii.        Sidebar Conferences

When asked about the issue of Petitioner's absence from sidebar conferences, particularly during voir dire, Mr. Spencer testified he never discussed Petitioner's right to be present with trial counsel because it did not appear to him to be an issue.  (Doc. no. 10-5, p. 21.)  Petitioner testified that after the jury was selected, trial counsel and counsel for the State had a sidebar conference with the judge, but Petitioner was not present.  (Id. at 52-53.)  Trial counsel did not tell Petitioner he had a right to be present during the sidebar conferences, during voir dire or otherwise; nor did counsel explain why he was not included in the conferences.  (Id. at 53.)  Furthermore, Petitioner testified he would have asked the judge "to say something about the jury.  I would ask the Judge to address the jury issue."  (Id. at 58.) He did not explain any particular facts or legal arguments he would have raised.  Petitioner did not identify any other sidebar conferences during his trial he did not attend, and he did not identify any topics other than an all-white jury that he would have spoken about had he been in attendance at any such sidebar.

### b.        Decision Not to Raise Ineffective Assistance of Trial Counsel Claim Regarding Failure to Raise Batson Objection

In Ground One, Petitioner alleges appellate counsel, Mr. Spencer, provided ineffective assistance by failing to raise an ineffective assistance of trial counsel claim based

on Ms. Graham's failure to raise a <u>Batson</u> challenge to the composition of an all-white jury. The state habeas court rejected Petitioner's ineffective appellate assistance claim on this point, concluding Petitioner had not shown trial counsel's failure to make a <u>Batson</u> objection was deficient or that appellate counsel not raising an ineffective assistance of trial counsel claim on this point fell below an objective standard of reasonableness.  (<u>See</u> doc. no. 10-2, pp. 6-11.)

The Supreme Court has summarized the three-step process required to establish a <u>Batson</u> claim as follows:  (1) "the opponent of the peremptory challenge [must] establish a *prima facie* case of discrimination"; (2) burden shifting "to the proponent of the strike 'to come forward with a race-neutral explanation' for the strike"; and (3) the trial court decides "if the opponent of the strike has proved purposeful racial discrimination."  <u>Wellons v. Warden, Ga. Diag. and Classification Prison</u>, 695 F.3d 1202, 1206-07 (11th Cir. 2012) (citing <u>Purkett v. Elem</u>, 514 U.S. 765, 767 (1995) (*per curiam*)).  Under Georgia law, to be successful on an ineffective assistance of trial counsel claim for failing to raise a <u>Batson</u> challenge, a petitioner is required to show not only that the <u>Batson</u> challenge should have been made, but also that the challenge would have been successful.  <u>Downey v. State</u>, 783 S.E.622, 628 (Ga. 2016).  As discussed in detail in Part IV(A)(2)(a)(i), *supra*, the state habeas court, after noting Petitioner had not provided any definitive evidence proving the race of each potential juror,[3] reviewed the trial transcript and concluded two of the five jurors identified by Petitioner's mother had been struck before jury selection began, and race-neutral reasons

---

[3]"The burden of ensuring the trial court had sufficient information before it to rule on a <u>Batson</u> challenge rested on [the appellant when] the challenge is being raised in the context of a claim of ineffectiveness."  <u>Downey</u>, 783 S.E.2d at 628.

existed for excluding the remaining three jurors that had been identified as African American.  (Doc. no. 10-2, p. 11.)  As there were race neutral reasons for excluding the only African American jurors identified by Petitioner, the state habeas court concluded Ms. Graham's failure to make a <u>Batson</u> challenge was not deficient performance, and likewise, Mr. Spencer's failure to raise a claim on appeal based on Ms. Graham's failure to raise a meritless objection did not fall below an objective standard of reasonableness.  (<u>Id.</u>)

Because Petitioner is challenging a state court ruling that rests on findings of fact, he must clear two hurdles:  (1) rebut the presumption of correctness that attaches to the findings of fact by "clear and convincing evidence," 28 U.S.C. § 2254(e)(1); and (2) overcome the deference owed to the state court's legal decision under § 2254(d).  <u>Whatley v. Warden, Ga. Diagnostic & Classification Ctr.</u>, 927 F.3d 1150, 1175 (11th Cir. 2019).  Because Petitioner raises his <u>Batson</u> challenge as an ineffective assistance of appellate counsel claim, there must be a showing of merit to an underlying ineffective assistance of trial counsel claim for not raising a <u>Batson</u> challenge at trial.  <u>Payne v. Allen</u>, 539 F.3d 1297, 1314-15 (11th Cir. 2008).  The court may consider whether the State had a valid, race-neutral reason for a strike, and if it did, there is no deficient performance for failing to make a <u>Batson</u> challenge.  <u>West v. Sec'y for Dep't of Corr.</u>, 151 F. App'x 820, 824 (11th Cir. 2005) (*per curiam*) (citing <u>Miller -El v. Cockrell</u>, 537 U.S. 322, 351 (2003) and <u>Chandler v. Moore</u>, 240 F.3d 907, 917 (11th Cir. 2001)).  Absent a showing of deficient performance, there can be no valid ineffective assistance claim under <u>Strickland</u>.

Petitioner fails to rebut the presumption of correctness of the facts upon which the state court based its decision and fails to show the state court's conclusion was an

unreasonable application of Strickland.   Petitioner points to no *evidence* in the record supporting a conclusion Ms. Graham had a valid Batson challenge at trial, or that Mr. Spencer would have had a valid ineffective assistance of trial counsel claim to raise on this point.   Instead, Petitioner relies on "intuition" (doc. no. 8, p. 11), and an analogy to a "committee of four blind men" (doc. no. 11, p. 3), to suggest this Court reach a different conclusion that the state court.   According to Petitioner, the mere existence of an all-white jury sitting at the trial of an African American is, or should be a Batson violation, but, "the mere fact of striking a juror or set of jurors of a particular race does not necessarily create an inference of discrimination" and must be considered in the totality of the circumstances of jury selection.   United States v. Ochoa-Vasquez, 428 F.3d 1015, 1044-45 (11th Cir. 2005).

Petitioner cites on Eagle v. Linahan, 279 F.3d 926 (11th Cir. 2001), to support his ineffective assistance of appellate counsel claim on this point, but this decision is inapposite. According to Petitioner, the appropriate question is whether a Batson objection was warranted at trial, not whether the challenge would have been successful, and if the objection was warranted, then *a fortiori*, trial counsel's failure to make the objection was ineffective assistance that should have been raised on direct appeal.  (Doc. no. 8, p. 13.)  Thus, goes the argument, appellate counsel's failure to raise the ineffective assistance of trial counsel claim on appeal amounts to ineffective appellate assistance, and Petitioner need not show there was a valid Batson objection to be made.  (Id.)  The Court disagrees.

First, Eagle is quickly distinguished from the instant case because the record contained a statement by the trial judge that counsel for both sides "were doing what you could to get the different races off" (the jury) and had misapplied the law.  279 F.3d at 931,

942.  There is nothing in this record suggesting the trial court conveyed a <u>Batson</u> problem had occurred at jury selection or misapplied the law.  Second, the <u>Eagle</u> court rejected a claim that appellate counsel was ineffective for failing to raise an ineffective assistance of trial counsel claim based on not raising a <u>Batson</u> challenge.  <u>Id.</u> at 937.  Rather, the petitioner was granted relief on the claim appellate counsel was ineffective for failing to raise a stand-alone <u>Batson</u> claim.  <u>Id.</u> at 943.  Petitioner here raised his ineffective appellate assistance claim based on failing to raise an ineffective assistance of trial counsel claim regarding the failure to make at <u>Batson</u> challenge at trial - requiring a showing of a valid claim meeting the two-prong <u>Strickland</u> test for trial counsel's performance, a showing Petitioner did not make.

Finally, post-<u>Eagle</u>, the Eleventh Circuit has continued to follow the <u>Strickland</u> requirement for showing a "reasonable probability of a different result sufficient to undermine our confidence in the outcome" of the case.  <u>Price v. Sec'y, Dep't of Corr.</u>, 548 F. App'x 573, 576 (11th Cir. 2013); <u>see also</u> <u>Wilson v. Sec'y, Fla. Dep't of Corr.</u>, 786 F. App'x 878, 880-81 (11th Cir. 2019) (*per curiam*) ("When counsel fails to object to the specific <u>Batson</u> grounds raised in a § 2254 petition, we focus on the likelihood of a more favorable result at trial."), *pet. for cert. filed*, No. 19-7204 (U.S. Nov. 25, 2019). Petitioner's conclusory reliance on the race of the jurors, standing alone, does meet his burden.  <u>See</u> <u>Wilson</u>, 786 F. App'x at 881. ("Wilson's only argument is that a more racially balanced jury would have been less likely to convict him.  This conclusory argument falls short of showing a substantial likelihood of a different result.")

In sum, the state court's decision to reject this ineffective assistance of appellate counsel claim was not an unreasonable application of <u>Strickland</u> or based on an unreasonable

determination of the facts in light of the evidence presented.  Applying the requisite AEDPA deference, the Court concludes Petitioner has not shown counsel's performance fell outside the wide range of professional assistance.  See Strickland, 466 U.S. at 689 (requiring highly deferential judicial scrutiny of counsel's performance without distorting effects of hindsight and application of strong presumption conduct falls within wide range of reasonable professional assistance).  This claim provides no basis for federal habeas corpus relief.

### c. Decision Not to Challenge Absence at Sidebar Conference Regarding Jury Composition

In Ground Two, Petitioner alleges Mr. Spencer rendered ineffective appellate assistance by failing to challenge Petitioner's absence from a sidebar conference between trial counsel, the State, and the trial court judge regarding the composition of the jury.  The state habeas court rejected Petitioner's ineffective appellate assistance claim on this point, acknowledging Petitioner's right to be present, see, and hear all the proceedings at trial but also explaining the right "does not extend to situations where the defendant's presence would be useless, or the benefit but a shadow."  (Doc. no. 10-2, p. 12 (citing Heywood v. State, 743 S.E.2d 12, 16 (Ga. 2013) and Zamora v. State, 731 S.E.2d 658, 664 (Ga. 2012).)  After also noting a defendant can waive his right to be present by acquiescence, the state habeas court ruled that without more information, it was unable to decide whether Petitioner's right to be present had been violated.  (Id. at 13.)  Petitioner had not met his burden to show he was entitled to be present at certain sidebar conferences because it is not sufficient to generally allege a right to be present at every sidebar conference without showing the conference was not "essentially legal argument about which the defendant presumably has no knowledge."

(Id.)  Nor had Petitioner shown he had not waived his right to be present by acquiescence. (Id.)  As such, the state habeas court concluded Mr. Spencer's failure to raise the sidebar issue on appeal did not fall below an objective standard of reasonableness.  (Id.)

As explained above, because Petitioner is challenging a state court ruling that rests on findings of fact, he must clear two hurdles of rebutting with "clear and convincing evidence" the presumption of correctness that attaches to the findings of fact and overcoming the deference owed to the state court's legal decision. See Whatley, 927 F.3d at 1175. Moreover, even though Petitioner's current ineffective assistance claim is one of constitutional dimension, this Court should "defer to the state's construction of its own law" when the federal ineffective assistance claim is based on counsel's failure to raise an issue of state law.  Pinkney v. Sec'y, DOC, 876 F.3d 1290, 1295 (11th Cir. 2017); see also Agan v. Vaughn, 119 F.3d 1538, 1549 (11th Cir. 1997) ("[S]tate courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.").  Therefore, when considering under the current circumstances "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard,"  Pinkney, 876 F.3d at 1295, the Court presumes the state habeas court knows, and correctly applied, Georgia law.  Moreover, Petitioner had the burden of proof on his claims and to complete the habeas record with the relevant records from trial.  Holt v. Ebinger, 814 S.E.2d 298, 301 (Ga. 2018).

Petitioner argues his involuntary absence from the sidebar conference concerning the composition of the jury was evident from the trial transcript such that counsel's failure to raise it on direct appeal was ineffective assistance because prejudice would have been

presumed and a new trial would have been mandated if the error had been raised.[4]  (Doc. no. 8, p. 9 (citing <u>Pennie v. State</u>, 520 S.E.2d 448 (Ga. 1999) and <u>Sammons v. State</u>, 612 S.E.2d 785 (Ga. 2005).)  Petitioner argues he could not have waived his right to be present because he did not know what the sidebar conference was about at the time it occurred, and "[i]t is simply not possible to pretend that a black defendant in rural Georgia would not be uncomfortable with an all-white jury." (<u>Id.</u> at 11.)  He further points to his testimony at the state habeas hearing that if he would have been at the sidebar conference, he would have asked the judge "to say something about the jury.  I would ask the Judge to address the jury issue."  (Doc. no. 10-5, p. 58.)

Petitioner's continued reliance on his conclusory arguments that seating an all-white jury automatically establishes counsel was ineffective for failing to raise any issue related to the jury composition does not show he is entitled to relief.  As in the state habeas proceedings, Petitioner does not offer any specific information or legal arguments he would have raised at the sidebar conference, or otherwise identify information his presence would have added to the sidebar.  Simply notifying the judge of the self-evident fact there was an all-white jury is not a legal argument or an otherwise unknown fact.  Moreover, as discussed in detail above, the record does not support the conclusion that there was a valid <u>Batson</u> challenge to be made.  Neither in the argument about his <u>Batson</u> claim or this related claim

---

[4]Although it appears Petitioner may have challenged his absence from multiple sidebar conferences at the state habeas proceedings, his federal petition is limited to challenging his absence from the sidebar conference concerning the jury composition.  The Court accordingly limits its analysis to this one sidebar.

about discussion of the jury at a sidebar has Petitioner identified any valid legal basis for challenging the jury selection process.

As explained by the state habeas court, Petitioner had a right to be present, see and hear the proceedings against him, and this "includes proceedings at which the jury composition is selected or changed." Pack v. State, 783 S.E.2d 146, 147 (Ga. App. 2018) (footnotes omitted). The trial transcript reveals that after commencing with the silent strike method of selecting jurors, the trial judge asked counsel to approach the bench. (Doc. no. 10-6, p. 18.) The judge asked whether there would be any motions regarding jury selection, to which defense counsel and the State answered no. (Id.) The sidebar ended, and the judge instructed the clerk to call the names of the jurors. There was no discussion about striking a particular juror or a specific issue raised about the jury selection process. Cf. Johnson v. State, 821 S.E.2d 76, 82-83 (Ga. App. 2016) (finding error to exclude defendant from sidebar conferences after analyzing whether defendant would have made a meaningful contribution to discussion of whether to exclude particular jurors for hardship or impartiality issue, as those questions are discretionary and require factual showing of cause). Petitioner has not identified any legal argument or specific fact he had to add to the eight-line conference.

Moreover, the Georgia Supreme Court has ruled that a defendant, present in the courtroom but not physically present at the bench during a sidebar conference, who voices no objection can acquiesce to the proceeding. Heywood, 743 S.E.2d at 16-17; Kennedy v. State, 554 S.E.2d 178, 180 (Ga. 2001). Petitioner does not deny he was present in the courtroom for the entirety of the jury selection process and saw the pool of jurors from which the jury was ultimately selected. Nor does he otherwise claim he was prevented from asking trial

29

counsel or the judge about his concerns with the jury.  Cf. Johnson, 821 S.E.2d at 83-84 (reviewing case law finding acquiescence where defendant present in courtroom, heard reasons for wanting to strike juror or objecting to opposing counsel's strike, and observed trial court's ruling).  The instant case is unlike Johnson, where the defendant was found not to have acquiesced to his exclusion from sidebars about striking specific jurors for cause where there were no transcripts of several bench conferences held off the record and defense counsel expressed an objection on the record to the defendant's absence.  See id.  The sidebar conference here was transcribed and reveals there was no specific issue raised as to any particular juror.

Also, Petitioner was present when the jurors were seated and knew there had not been any objection raised to seating an all-white jury.  Mr. Spencer testified in reviewing the record, the sidebar conferences did not appear to be an issue, and he saw no reason to bring it up.[5]  (Doc. no. 10-5, p. 21.)  Given the lack of information in the record concerning what Petitioner would have added to the sidebar conference to move his presence past a "shadow" benefit, Petitioner fails to show no reasonable lawyer could have acted in the circumstances as Mr. Spencer did by choosing not to raise the sidebar issue, see Ward, 592 F.3d at 1164, and likewise fails to show this Court should disturb the state habeas determination Mr. Spencer's representation on this point did not fall below an objective standard of reasonableness.  See Meders v. Warden, Ga. Diagnostic Prison, 911 F.3d 1335, 1349 (11th

---

[5]The record from the habeas hearing also shows Petitioner's mother testified she spoke with defense counsel about the composition of the jury when she realized it would be an all-white jury, adding support for the conclusion someone present in the courtroom would be aware ongoing proceedings were related to jury selection.  (Doc. no. 10-5, p. 47.)

Cir. 2019) ("[I]f some fairminded jurists could agree with the state court's decision, although others might disagree, federal habeas relief must be denied." (citation omitted).)

In sum, the state court's decision to reject this ineffective assistance of appellate counsel claim was not an unreasonable application of Strickland or based on an unreasonable determination of the facts in light of the evidence presented.  Applying the requisite AEDPA deference, the Court concludes Petitioner has not shown counsel's performance fell outside the wide range of professional assistance.  See Strickland, 466 U.S. at 689 (requiring highly deferential judicial scrutiny of counsel's performance without distorting effects of hindsight and application of strong presumption conduct falls within wide range of reasonable professional assistance).  This claim provides no basis for federal habeas corpus relief.

### 3. The State Court's Application of Strickland to Petitioner's Ineffective Assistance of Trial Counsel Claim in Ground Three Was Not Objectively Unreasonable

In Ground Three, Petitioner argues Ms. Graham provided ineffective assistance at trial by failing to call as a witness the lead investigator in the case, GBI Special Agent Spencer Barron.  Petitioner asserts SA Barron could have provided testimony impeaching State witnesses who had given inconsistent statements and explaining someone else had originally been arrested for the murder but later agreed to help the prosecution with its case against Petitioner.  (Doc. no. 1, p. 7; doc. no. 8, pp. 13-16.)  The Georgia Supreme Court rejected this claim on direct appeal, concluding Ms. Graham, an experienced criminal defense lawyer, made a strategic decision that was not entirely unreasonable to forego calling SA Barron.  McDuffie, 779 S.E.2d at 623-24.  Moreover, Petitioner had not shown a

reasonable probability of a more favorable trial outcome, particularly because three other eyewitnesses identified Petitioner as the shooter.  Id. at 624.

Applying AEDPA deference to this ineffective assistance of counsel claim previously analyzed and rejected by the Georgia Supreme Court, federal habeas relief is not warranted. See Wilson, 584 U.S.-, 138 S. Ct. at 1192 (requiring federal habeas court to review reasons of merits-based decision by state court and defer to those reasons if they are reasonable).  As explained in detail above, the Court is guided by AEDPA's mandate that factual determinations made by a state court are presumptively correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  Tharpe, 834 F.3d at 1337.

Moreover, to the extent Petitioner indirectly challenges the facts as determined by the state appellate court by making legal arguments, that does not rebut by clear and convincing evidence the presumption of correctness attached to the state opinion.  Davis v. Sellers, 940 F.3d 1175, 1188 & n.12 (11th Cir. 2019).  "Federal habeas proceedings 'are not forums in which to relitigate state trials.'"  Jamerson v. Sec'y for Dep't of Corr., 410 F.3d 682, 687 (11th Cir. 2005).  As described above, AEDPA requires the Court give deference to the state-court decision, and that deference must be "near its apex" when considering Strickland claims that turn on general, fact-driven standards.  Sexton, 584 U.S.-, 138 S. Ct. at 2560.

### a.      Deference Owed to Trial Strategy

Strategic decisions are entitled to a "heavy measure of deference."  Strickland, 466 U.S. at 691.  "[A] court should be highly deferential to those choices made by defense

counsel in the conduct of a trial that are arguably dictated by a reasonable trial strategy." Devier v. Zant, 3 F.3d 1445, 1450 (11th Cir. 1993). As explained in Part IV(A)(1), *supra*, "strategic choices are 'virtually unchallengeable.'" Provenzano, 148 F.3d at 1332. "Which witnesses, if any, to call . . . is the epitome of a strategic decision, and it is one that [the Court] will seldom, if ever, second guess." Waters, 46 F.3d at 1512; see also Evans v. Sec'y, Fla. Dep't of Corr., 699 F.3d 1249, 1268 (11th Cir. 2012) (same). Ineffective assistance of counsel cannot be based on "[t]he mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified." Foster v. Dugger, 823 F.2d 402, 406 (11th Cir. 1987); see also United States v. Long, 674 F.2d 848, 855 (11th Cir. 1982) ("This Court will not second-guess tactical decisions of counsel in deciding whether to call certain witnesses."). "Even if in retrospect the strategy appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it." Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983) (*per curiam*) (citations omitted).

The purpose of the review is not to grade counsel's performance because, of course, every lawyer "could have done something more or different. . . . But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*). That is, Strickland requires application of a totality-of-the-circumstances standard because "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Khan v. United States, 928 F.3d 1264,

1273 (11th Cir.) (citation omitted), *cert. dismissed*, 140 S. Ct. 339 (U.S. Nov. 5, 2019).  As

recently emphasized by the Eleventh Circuit:

> [D]eferential review under <u>Strickland</u> does not ask whether counsel could
> possibly or ideally have been more effective.  "The test for ineffectiveness is
> not whether counsel could have done more."  We do not ask whether an
> attorney's representation "deviated from best practices or common custom,"
> and we should resist the temptation to second-guess an attorney with the
> benefit of our hindsight.  We ask only "whether, in light of all the
> circumstances, the identified acts or omissions were outside the range of
> professionally competent assistance."

<u>Jenkins v. Comm'r, Ala. Dep't of Corr.</u>, 936 F.3d 1252, 1271 (11th Cir. 2019) (internal

citations omitted).

### b.     Petitioner Has Not Established the Georgia Supreme Court Decision Was Objectively Unreasonable

At the time of Petitioner's trial, Ms. Graham had been practicing law for

approximately twenty-seven years, had experience as both a prosecutor and defense counsel,

and had tried 200 to 300 jury trials.  (Doc. no. 10-7, pp. 98-99.)  Her theory of the case was

that Petitioner was not the shooter, and the theory was supported by the prosecution's almost

exclusive reliance on testimony of witnesses who had given prior inconsistent statements to

the police.  (<u>Id.</u> at 99, 132.)  As part of her trial strategy, Ms. Graham had to weigh putting

SA Barron, the case agent, on the stand versus the testimony she could obtain by cross-

examining the State's witnesses without risking introduction of Petitioner's statements to SA

Barron, including that Petitioner admitted (1) being at the scene of the shooting; (2) having a

motive to kill the victim; and (3) quickly exiting the scene after the murder.  (<u>Id.</u> at 129-32.)

The Georgia Supreme Court further recognized SA Barron could have testified it was

Petitioner's initial false testimony to law enforcement that led to the arrest of another

individual, who was held almost five months before being released.  McDuffie, 779 S.E.2d at

623; (see also doc. no. 10-7, pp. 147-49).

Moreover, as also noted by the Georgia Supreme Court, Ms. Graham made a strategic

decision not to call SA Barron because "case agents are generally more harmful than helpful

to the defense, and she was able to use [a State witness's] initial statements to impeach him

on cross-examination."  McDuffie, 779 S.E.2d at 623.  Specifically, Ms. Graham testified she

did not consider it a mistake not to have subpoenaed SA Barron because:

> [T]he reason I do not subpoena as a trial tactic case agents because I don't
> consider them witnesses that would be beneficial to the defendant.  In this case
> there were prior inconsistent statements that were given.   And those
> individuals were cross-examined with regard to those prior inconsistent
> statements.  I didn't know whether Agent Barron was going to be helpful in
> this case, but I didn't think that he was going to say anything to help
> [Petitioner].  As a trial tactic I decided - - I didn't subpoena him, no.

(Doc. no. 10-7, p. 109.)

Petitioner presents nothing in these proceedings showing the Georgia Supreme

Court's decision that he had not established deficient performance in not calling SA Barron

was objectively unreasonable.   His contention Ms. Graham did not articulate any case

specific reason for not calling SA Barron, (doc. no. 8, p. 16), is, as explained above,

demonstrably false.   Petitioner has not shown Ms. Graham's strategy of impeaching the

State's witnesses on cross-examination with prior inconsistent statements rather than calling

SA Barron and risking introduction of other, unfavorable testimony was "so patently

unreasonable that no competent attorney would have chosen it."  Adams, 709 F.2d at 1445.

Likewise, Petitioner presents nothing undermining the Georgia Supreme Court's

determination that SA Barron's testimony would not have, with reasonable probability, led to

a more favorable outcome at trial.  McDuffie, 779 S.E.2d at 624.  As the appellate opinion points out, there was testimony at trial from three eyewitnesses who identified Petitioner as the shooter.  Id.; (see also doc. no. 10-6, pp. 118-19, 141-42, 180 (multiple witnesses testifying Petitioner was the shooter).  Petitioner simply asks this Court to interpret the record in accordance with his view and reach a different result.  AEDPA does not permit such reweighing of the record.

In sum, the state court's decision to reject this claim was not an unreasonable application of Strickland or based on an unreasonable determination of the facts in light of the evidence presented.  Petitioner has not shown ineffective assistance with respect to Ms. Graham's strategic decision not to call SA Barron to testify at trial, and this claim provides no basis for federal habeas corpus relief.

### B. Ground Four Is Procedurally Defaulted or Otherwise Fails to State a Claim for Federal Habeas Corpus Relief

In Ground Four, Petitioner alleges Ms. Graham provided ineffective assistance at trial by failing to object to racially inflammatory remarks made during the prosecutor's closing arguments.  Petitioner further alleges the inflammatory remarks violated his Due Process Rights under the United States Constitution and Georgia law.  Respondent argues the ineffective assistance claim is procedurally defaulted under Georgia's successive petition rule, the United States Constitution Due process allegation was not properly preserved for review at the state level, and the allegation of a Due Process violation under Georgia law fails to state a viable claim for federal habeas corpus relief.

1.      **A Federal Habeas Petitioner Defaults a Claim by Failing to Properly Exhaust State Remedies**

AEDPA preserves the traditional exhaustion requirement, which requires a district court to dismiss unexhausted habeas claims the petitioner did not raise in state court, but could have raised by any available procedure.  28 U.S.C. § 2254(b)(1)(A) & (c).  A state inmate is deemed to have exhausted his state judicial remedies when he has given the state courts, or they have otherwise had, a fair opportunity to address the federal claims.  Castille v. Peoples, 489 U.S. 346, 351 (1989).  "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  Turner v. Crosby, 339 F.3d 1247, 1281 (11th Cir. 2003) (citing O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999)).

"A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts."  Henderson v. Campbell, 353 F.3d 880, 891 (11th Cir. 2003) (quoting Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001)).  The exhaustion requirement applies with equal force to all constitutional claims.  See Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1351-54 (11th Cir. 2012); Footman v. Singletary, 978 F.2d 1207, 1211 (11th Cir. 1992).  "Ultimately, 'to exhaust state remedies fully[,] the petitioner must make the state court aware that the claims asserted present federal constitutional issues.'"  Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015) (citation omitted).  Furthermore, a petitioner's failure to exhaust his claims properly ripens into a procedural default once state remedies are no longer available.  McNair v. Campbell, 416 F.3d 1291, 1305 (11th Cir. 2005).

A federal habeas petitioner can run afoul of procedural default rules in one of two ways, depending on whether the claim is an old one the petitioner already attempted to assert unsuccessfully in state court, or a new one the petitioner never attempted to raise in state court.   First, a federal habeas petitioner cannot revive an old claim that a state court previously denied on independent and adequate procedural grounds.   "As a general rule, a federal habeas court may not review state court decisions on federal claims that rest on state law grounds, including procedural default grounds, that are 'independent and adequate' to support the judgment."   Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1335 (11th Cir. 2012).

A state court decision rests on "independent and adequate" state procedural grounds when it satisfies the following three-part test:

> First, the last state court rendering a judgment in the case must clearly and expressly say that it is relying on state procedural rules to resolve the federal claim without reaching the merits of the claim.   Second, the state court decision must rest solidly on state law grounds, and may not be intertwined with an interpretation of federal law.   Finally, the state procedural rule must be adequate; i.e., it may not be applied in an arbitrary or unprecedented fashion. The state court's procedural rule cannot be "manifestly unfair" in its treatment of the petitioner's federal constitutional claim to be considered adequate for purposes of the procedural default doctrine.   In other words, a state procedural rule cannot bar federal habeas review of a claim unless the rule is "firmly established and regularly followed."

Id. at 1336 (internal quotations and citations omitted).   Additionally, the Supreme Court has made clear that "a state procedural bar may count as an adequate and independent ground for denying a federal habeas petition even if the state court had discretion to reach the merits despite the default."   Walker v. Martin, 562 U.S. 307, 311 (2011).

Second, a federal habeas petitioner runs afoul of procedural default rules when he

attempts to bring a new claim in his federal petition that would be procedurally barred if he attempted to raise it in state court.  In such instances, unless the petitioner either establishes the cause and prejudice or the fundamental miscarriage of justice exception, the failure to bring the claim properly in state court has "matured into a procedural default."  Smith v. Jones, 256 F.3d 1135, 1138-39 (11th Cir. 2001).  Thus, where a state procedural bar is apparent, a court "can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief."  Smith v. Sec'y, Dep't of Corr., 572 F.3d 1327, 1342 (11th Cir. 2009) (citing Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998)); Bailey v. Nagle, 172 F.3d 1299, 1303 (11th Cir. 1999).  To determine whether a claim is procedurally barred in this way, the federal court must ask whether "it is clear from state law that any future attempts at exhaustion would be futile."  See Bailey, 172 F.3d at 1305.

Simply put, if a claim has not been "fairly presented to the state courts, it is procedurally defaulted."  Jones v. Campbell, 436 F.3d 1285, 1304 (11th Cir. 2006).  To that end, absent a showing of either cause to excuse the default and actual prejudice or a fundamental miscarriage of justice, O.C.G.A. § 9-14-48(d) precludes state habeas review of any issue not preserved for collateral attack in a state court by timely objecting and raising the issue on appeal.  See Devier v. Zant, 3 F.3d 1445, 1454-55 (11th Cir. 1993) (citing O.C.G.A. § 9-14-48(d) and upholding a finding of procedural default on numerous claims); see also Waldrip v. Head, 620 S.E.2d 829, 835-36 (Ga. 2005) ("Claims not raised on direct appeal are barred by procedural default, and in order to surmount the bar to a defaulted claim, one must meet the 'cause and prejudice' test."); Black v. Hardin, 336 S.E.2d 754, 755

(Ga. 1985) ("The rule now may be stated as follows:  a failure to make timely objection to *any* alleged error or deficiency or to pursue the same on appeal ordinarily will preclude review by writ of habeas corpus.").  In addition, Georgia law prohibits the assertion of state habeas claims in any successive petition that could have been asserted in the original state habeas petition.  O.C.G.A. § 9-14-51; Chambers v. Thompson, 150 F.3d 1324, 1327 (11th Cir. 1998) ("The Georgia statute restricting state habeas review of claims not presented in earlier state habeas petitions can and should be enforced in federal habeas proceedings against claims never presented in state court . . . .").

### 2. Petitioner Procedurally Defaulted His New, Ineffective Assistance Claim against Ms. Graham Regarding the Prosecutor's Closing Argument

Petitioner argues Ms. Graham provided ineffective assistance by failing to object to the following statement in the prosecutor's closing arguments:

> I'm sure you realized while the trial was going on that these witnesses, these young men, they live by a different code and set of rules than the rest of us.  And by that, I mean they value, in their culture of these young people, of their friends, they live in a different culture than we do.  They value things like loyalty to one another.  They value things like being tough men, being bad. They value things like having the nifty rides painted up with the rims, diamond earrings, gold teeth.  Those are the things that they value in their community, in their culture.

(Doc. no. 10-7, pp. 68-69.)

On direct appeal, Mr. Spencer argued Petitioner had been "denied due process of law under the U.S. and Georgia Constitutions when the prosecutor made racially inflammatory or stereotyping remarks during its closing argument."  (Id. at 191.)  None of the three claims of ineffective assistance raised against Ms. Graham addressed the issue of closing arguments.

McDuffie, 779 S.E.2d at 623-24.  "[H]abeas petitioners may not present particular factual instances of ineffective assistance of counsel in their federal petition that were not first presented to the state courts." Kelley v. Sec'y for Dep't of Corr., 377 F.3d 1317, 1344 (11th Cir. 2004) (citing Footman, 978 F.2d at 1211).  Accordingly, Petitioner's ineffective assistance of trial counsel claim regarding closing arguments is new, could have been presented in the state courts, and therefore is now procedurally defaulted.  See O.C.G.A. § 9-14-51; Chambers, 150 F.3d at 1327.

> **3.** **Consideration of Petitioner's Claim the Prosecutor's Comments Violated his Due Process Rights under the United States Constitution Is Barred Because the State Court Finding the Claim Was Not Properly Preserved Is an Independent and Adequate State Ground for Denying Relief**

Petitioner also alleges in Ground Four the prosecutor's remarks violated his Due Process rights under the United States Constitution.  The Georgia Supreme Court determined the claim was not preserved for review because no objection was raised at trial.  McDuffie, 779 S.E.2d at 624 (citing Powell v. State, 733 S.E.2d 294, 298 (Ga. 2012)).  In Powell, the Georgia Supreme Court relied on state precedential case law, as well as the language of O.C.G.A. § 17-8-75, to reject an argument for reversal based on a prosecutor's allegedly improper remarks because "[i]n the appeal of a non-capital case, the defendant's failure to object to the State's closing argument waives his right to rely on the alleged impropriety of that argument as a basis for reversal." Powell, 733 S.E.2d at 298.  Because this Due Process claim was not timely raised in the state court proceedings and was denied by the state court under state procedural default rules, it is procedurally defaulted in these proceedings and provides no basis for federal habeas relief.  See Boyd, 697 F.3d at 1336; McNair, 416 F.3d at

1305; Smith, 256 F.3d at 1139.

> **4.** **Petitioner Cannot Satisfy the Cause and Prejudice Standard to Justify Federal Review of His Defaulted Claims, and the Miscarriage of Justice Exception Does Not Apply**

"A petitioner may obtain federal review of a procedurally defaulted claim if he can show both cause for the default and actual prejudice resulting from the default." Jones, 436 F.3d at 1304 (citing Wainwright v. Sykes, 433 U.S. 72, 97 (1977)). "Cause for a procedural default exists where something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the State's procedural rule." Maples v. Thomas, 565 U.S. 266, 280 (2012) (internal quotation marks omitted). "Once cause is proved, a petitioner also must prove prejudice. He must show 'not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)). For example, procedural default does not preclude federal habeas review when

> (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law *requires* that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

Trevino v. Thaler, 569 U.S. 413, 423 (2013); Martinez v. Ryan, 566 U.S. 1, 13-14, 16-17 (2012).

Petitioner has presented no valid justification for failing to raise his defaulted claims at the proper time in his state proceedings, let alone something external to him that cannot be fairly attributed to him.  Petitioner's attempts to bootstrap his barred claims under the rubric of ineffective assistance of counsel fails because, as explained herein, Petitioner has no valid ineffective assistance of counsel claims.   See Nyhuis, 211 F.3d at 1344 (recognizing ineffective assistance of counsel claim, if it has merit, may satisfy cause exception to procedural bar).

As to the procedurally barred claim of ineffective assistance for failing to object to the prosecutor's statement, Ms. Graham testified at the motion for new trial she considered the prosecutor's statements as referring to the State's witnesses, the people Ms. Graham had "worked real hard to separate" from Petitioner.  (Doc. no. 10-7, p. 123.)  Ms. Graham acknowledged that in hindsight, the statements were offensive, but in her mind they pointed out the fact that the State's witnesses were liars, people unlike Petitioner.  (Id. at 124.)  Thus, she strategized that by objecting to the comments as racially insensitive, she might have put Petitioner into the same group she had worked to disassociate him from throughout the trial.  (Id. at 124, 132-33.)

As discussed in detail in Part IV(A)(1) and IV(A)(3)(a), strategic decisions are entitled to a heavy measure of deference.  Strickland, 466 U.S. at 691.  Of course, counsel may have a reasonable strategic reason for not making a potentially valid objection.  See Walls v. Buss, 658 F.3d 1274, 1279 (11th Cir. 2011).  As the Eleventh Circuit recognized, "The failure to make every valid objection . . . will not necessarily take counsel's performance 'outside the wide range of professionally competent assistance,' which is the

scope of permissible performance." Brewster v. Hetzel, 913 F.3d 1042, 1057 (11th Cir. 2019). Moreover, counsel's performance is not judged in hindsight. Waters, 46 F.3d at 1514 ("The widespread use of the tactic of attacking trial counsel by showing what might have been proves that nothing is clearer than hindsight – except perhaps the rule that we will not judge trial counsel's performance through hindsight."). Ms. Graham choosing not to raise an objection to the prosecutor's statements in support of her strategy to disassociate Petitioner from the State's witnesses she had strived to portray as liars falls within "the wide range of professionally competent assistance [passing] constitutional muster." Philmore, 575 F.3d at 1260. As Ms. Graham's performance on this point was not outside the realm of what any competent counsel would have done, and a court should not second guess trial strategy, Chandler, 218 F.3d at 1314, the two-pronged Strickland test cannot be met.

Because the Court concludes there is no valid underlying ineffective assistance of trial counsel claim, and appellate counsel cannot be ineffective for failing to raise a meritless claim, see Nyhuis, 211 F.3d at 1344, Petitioner has not established cause to excuse his default of these claims. Petitioner makes no argument other than ineffective assistance to show cause for his failure to raise these claims of ineffective assistance of trial counsel as argued in these federal proceedings, or a stand-alone Due Process claim under the United States Constitution - concerning the prosecutor's remark. As a petitioner must show cause *and* prejudice for failing to raise the claims, his failure to satisfy the cause prong is fatal to his claims.

"Additionally, in extraordinary cases, a federal court may grant a habeas petition without a showing of cause and prejudice to correct a fundamental miscarriage of justice." Jones, 436

F.3d at 1304 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)).  The narrow fundamental miscarriage of justice exception encompasses the extraordinary instance in which a constitutional violation probably has resulted in the conviction of one actually innocent of the crime.  Murray, 477 U.S. at 496; see also Johnson, 256 F.3d at 1171 ("This exception is exceedingly narrow in scope, as it concerns a petition's 'actual' innocence rather than his 'legal' innocence.").  In McQuiggin v. Perkins, the Supreme Court held that this exception survived AEDPA's passage but "applies to a severely confined category:  cases in which new evidence shows it is more likely than not that no reasonable juror would have convicted [the petitioner]."  569 U.S. 383, 395 (2013) (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)).  Petitioner does not offer any new evidence that he is probably, factually innocent of murder for which he was convicted.  Rather, he asks the Court to view the evidence in a more favorable way than the jury and the state courts who reviewed the record, and reach a different conclusion.  For all the reasons discussed above, AEDPA deference does not permit such reweighing of the evidence.

Accordingly, the ineffective assistance claim raised against Ms. Graham for not objecting to the prosecutor's remarks during closing argument, as well as the Due Process argument raised under the United States Constitution, have been defaulted, are not excused by any exception, and provide no basis for federal habeas corpus relief.

### 5.     Allegation of Violation of State Law Does Not Support a Claim for Federal Habeas Corpus Relief

Ground Four of the petition also alleges the prosecutor's remarks during closing argument violated Georgia law.  A state court criminal judgment may be collaterally attacked

in the federal courts only if it violated federal law.  Wilson v. Corcoran, 562 U.S. 1, 3 (2010).

As the habeas statute explains, the federal writ may issue to a state petitioner only when that

petitioner "is in custody in violation of the Constitution or law or treaties of the United

States." 28 U.S.C. § 2254(a).  "Because state courts are the ultimate expositors of state law,

we are bound by state-court determinations on state-law questions.  Put another way, "[a]

state's interpretation of its own laws or rules provides no basis for federal habeas corpus

relief, since no question of a constitutional nature is involved."  Jones v. GDCP Warden, 815

F.3d 689, 722-23 (11th Cir. 2016) (internal citations and quotes omitted).  In sum, the federal

habeas court does not sit as a "'super' state supreme court."  Shaw v. Boney, 695 F.2d 528,

530 (11th Cir. 1983) (*per curiam*) (citations omitted).

Thus, this portion of Ground Four raising an alleged error of state law forms no basis

for federal habeas corpus relief.

## V.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the

§ 2254 petition be **DENIED** without an evidentiary hearing or appointment of counsel, this

civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 3rd day of April, 2020, at Augusta,
Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA